**Sheldon P. ROTHENBERG, Plaintiff-Appellant,**

v.

**Dean KAMEN and Evelyn Kamen, Defendants-Appellees.**

**No. 1168, Docket 84–7072.**

United States Court of Appeals, Second Circuit.

Argued May 4, 1984.

Decided June 4, 1984.

Herbert Blecker, New York City (John M. Calimafde, Robert E. Kosinski, Ira B. Winkler, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, of counsel), for plaintiff-appellant.

Gerald Gillerman, Boston, Mass. (Gene K. Landy, Eileen M. Herlihy, Widett, Slater & Goldman, P.C., Boston, Mass., of counsel), for defendants-appellees.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

PER CURIAM:

In this diversity action in the Eastern District of New York for breach of contract plaintiff Sheldon Rothenberg appeals from a judgment entered by Judge Eugene H. Nickerson on December 22, 1983, dismissing the suit pursuant to an order entered by him on September 20, 1983, during the course of a jury trial of the case, upon the court's being advised by the parties that they had reached basic settlement terms. The order of discontinuance provided that it was "without prejudice to the right to reopen the action if the settlement is not consummated." Nevertheless, when the plaintiff, prior to the court's dismissal of the action, moved to reopen on the ground that the settlement had been procured by fraud, the court denied his motion, from which he also appeals.

The action is for breach of an August 4, 1976, agreement between the parties relating to the marketing of certain patented medical syringe devices, or "pumps." The patent was owned by Auto Syringe, Inc., more than 50% of which was owned by the defendants. The agreement obligated the defendants, if they should sell their interest in the company and receive a "royalty" from the buyer, to pay plaintiff 50% of the royalty or $9 per pump, whichever was higher. In January 1982 the defendants arranged for the sale of the entire outstanding capital stock of the company to Baxter Travenol Laboratories, Inc. (Baxter) for $17 million.

In the present action plaintiff claims that, since the pump patent was valued at $8 million by the parties to the sale, that figure represented a "royalty," of which he was entitled to 50%, or $4 million, under

the 1976 agreement. During trial the parties, with the active encouragement of the court, orally agreed in principle to a settlement under which defendant Dean Kamen would pay plaintiff 3% of the net sales price of all future sales by Baxter of the pumps covered by the patent plus the difference between $9 per pump, which plaintiff had been receiving, and 3% of the net sales of the patented pumps going back to 1975. In colloquy regarding these terms defendants' counsel stated to the court, "There can be no assurance of what is going to happen in the future.... It's unpredictable." One of the basic terms of the proposed settlement was a disclaimer by the defendants of any warranty regarding future sales of pumps covered by the patent.

On September 30, 1983, just 10 days after the parties had reached their agreement in principle, defendants' counsel sent to plaintiff's counsel a draft of the proposed Settlement Agreement which disclosed that:

> "[T]here are in existence plans which, if and when successfully consummated, will replace the entire existing pump line with drug infusion pumps of advanced designs which are not within the claims of U.S. Patent No. 3,858,581...."

Similarly, in a letter dated November 3, 1983, defendants' counsel wrote that

> "[D]uring the past 18 months a significantly advanced new pump was designed. This new pump, dubbed the Pumpette, Model 8–MP, is now fully tooled and its custom integrated circuits are now being received. The Pumpette ... does not utilize or infringe Patent # 3858581. Announcement and release of this pocket-sized new product is currently scheduled for late 1983. Obviously, the Pumpette is not covered by the new agreement and will yield no payment to Dr. Rothenberg. It is reasonable to expect that availability of the Pumpette will quickly eliminate what little demand exists for the 6C, 6C–U100 and the 6MP." (Emphasis added).

Plaintiff thereupon charged that he had been misled into accepting in principle the basic settlement terms by the defendants' failure to advise him of these advanced plans to market a new pump which would render his right under the proposed settlement to 3% of future sales of *patented* pumps close to worthless. He asserts that the defendants' statement at the time of the settlement discussions that the level of future sales of the patented pumps was "unpredictable" was false for the reason that they then *could* predict at that time that the volume of future sales would shortly drop to nothing because of the impending introduction of the superseding model.

■ It is basic that "a settlement contract or agreement, like any other, may be attacked on grounds that it was procured by fraud," *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972). The plaintiff has raised a colorable claim that the agreement at issue was obtained by defendants' assertions that "one cannot predict the future" when in fact the defendants were able to predict the future, or at least one relevant aspect of it. In denying plaintiff's motion to reopen the case, the district court stated that there had been no fraud because "I don't know of anything in the settlement, and you haven't suggested anything that says Mr. Kamen or whoever wasn't entitled to design around the patent." (412a). However, "designing around the patent" is not the alleged fraud in this case; the alleged fraud stems from defendants' arguably false statement that the volume of future sales was unpredictable when they had information indicating that the volume would shortly decline because of the technological obsolescence of the patented pump. In addition, plaintiff contends that in representing falsely that the future volume of sales was unpredictable, defendants owed a duty at the time of the settlement negotiations to disclose the prospective sharp volume decline, which would have led him to reject the proposed settlement.

Under these circumstances a hearing is necessary to determine what knowledge

the defendants had as of September 20, 1983, the date of the settlement, regarding then existing plans to replace the patented pumps with a new design that would sharply eliminate demand for the former and the extent of the disclosure, if any, to the plaintiff. If the court finds that defendants' statements were fraudulent it must then determine whether that fraud induced the plaintiff's acceptance of the terms of settlement.

Accordingly, the case is remanded to the district court for an evidentiary hearing on the issues raised by the plaintiff.