**PETERSVILLE SLEIGH LIMITED, H.C. Sleigh North America Inc., and H.C. Sleigh Netherlands, B.V., Plaintiffs,**

v.

**Peter G. SCHMIDT, Alexander Aghayan, Steven A. Saide, Schmidt, Aghayan & Saide, Schmidt & Associates, Leonard R. Glass, The Law Offices of Leonard R. Glass, and Sol Freedman, Defendants.**

**Patricia Burke and Michele Burke Majer, as Co–Executors of the Last Will and Testament of Michael Burke, Deceased, Applicants for Intervention.**

**No. 86 Civ. 7959 (CSH).**

United States District Court, S.D. New York.

Feb. 2, 1989.

Jones, Day, Reavis & Pogue, New York City (Francis X. Markey, of counsel), for plaintiffs.

Tanner Propp Fersko & Sterner, New York City (Richard J. Schulman, of counsel), for defendant Steven A. Saide.

Lankenau Kovner & Bickford, New York City (John C. Lankenau, of counsel), for applicants for intervention.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Patricia Burke and Michele Burke Majer are the co-executors of the will of Michael Burke, deceased. Mr. Burke, a former president of the New York Yankees and chairman of Madison Square Garden, died in Dublin in 1987, having retired to Ireland in 1981. His executors move this Court for an order directing the three corporate plaintiffs to return to the Estate of Michael Burke (the Estate) $1.8 million in funds which the Estate alleges defendant Peter G. Schmidt stole from it and used to pay the judgment rendered against him in this

action. Alternatively, the Estate moves to intervene of right in this action, and to serve a complaint in intervention. In support of the requested order directing return of funds, the Estate relies upon "this Court's inherent equitable jurisdiction." For the alternative motion to intervene, the Estate invokes Rule 24(a)(2), F.R.Civ.P. Plaintiffs and certain defendants resist the Estate's motion.

## FACTUAL BACKGROUND

The events giving rise to this motion began in August 1981, when the plaintiffs entered into a stock purchase agreement with AOV Industries, Inc. and its two shareholders, J. Richard Knop and Mark H. Bruce. During the negotiations leading up to that agreement plaintiffs, buyers under the purchase agreement, were represented by the law firm of Schmidt, Aghayan & Saide. AOV and its shareholders Knop and Bruce, the sellers, were represented by the law offices of Leonard R. Glass.

Contemporaneously with the stock purchase agreement, the parties entered into an escrow agreement, pursuant to which the two law firms agreed to act as escrow agents for $1.5 million of the purchase price, which was to be held in escrow pending the provision of audited financials of AOV to plaintiffs. These funds were to be used as security for any breaches of warranties or representations made by the sellers in the stock purchase agreement.

In November 1981 AOV filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. In August 1982 plaintiffs commenced an action in this Court against Knop, Bruce and others for violations of federal and state securities laws, common law fraud and negligence in connection with the transaction. Plaintiffs also filed a claim under the escrow agreement. That action was assigned to Judge Owen. *H.C. Sleigh Limited et al. v. J. Richard Knop et al.*, 82 Civ. 5490 (RO).

On June 30, 1986 the parties to that action entered into a settlement agreement by which plaintiffs agreed to release the defendants in return for certain payments, and the release of the escrowed funds to plaintiffs. Defendants Schmidt and Glass had represented that the escrow funds then amounted to not less than $2.3 million. Under the settlement agreement the escrow agents, who were parties to the settlement agreement, agreed to deliver the escrowed funds to plaintiffs not later than August 4, 1986.

The escrow agents failed to deliver the escrow funds to plaintiffs. Plaintiffs instituted the captioned action against them in October 1986. Plaintiffs suggested that the case be referred to Judge Owen as related to 82 Civ. 5490, but Judge Owen, properly in my view, did not regard the case as sufficiently related under the assignment rules, and so this second suit was assigned to this Court.

Ultimately Schmidt admitted that he had converted the escrow funds. This Court held a number of scheduling conferences, as part of regular case management. In February 1987 Schmidt and plaintiffs entered into a stipulation, which the Court endorsed, in which Schmidt agreed to pay plaintiffs $2,350,000 plus interest and attorney's fees. Schmidt agreed in the stipulation not to transfer stock interests in two corporations, and two houses and three cooperative apartments, such property to stand as security for Schmidt's obligations under the stipulation. Schmidt made certain payments pursuant to that stipulation, but thereafter defaulted on his obligations. Plaintiffs thereupon applied to the Court for judgment against Schmidt in the amount of $2,061,500 plus interest to April 28, 1987 in the amount of $271,440.23 for a total of $2,332,940.23. The Court signed that judgment on April 28, 1987. It was docketed on April 30.

Thereafter counsel for plaintiffs conferred further with Schmidt for the purpose of effecting a final settlement of the action. Eventually Schmidt arranged for a transfer of $1.8 million from his account at a New York bank to the escrow account of plaintiffs' counsel. During these discussions, Schmidt represented to plaintiffs' counsel, Francis X. Markey, Esq., that he had obtained these funds from a personal friend in England, Henry Edward Cubitt,

Lord Ashcombe. Markey telephoned Lord Ashcombe in England to confirm Schmidt's advice concerning the source of the settlement funds. Lord Ashcombe gave Markey assurances which were false, having previously been asked to do so by Schmidt. Plaintiffs and the Estate now dispute the particular contents of Markey's telephone discussions with Lord Ashcombe, but in the view I take of the case, I need not resolve that dispute.

After plaintiffs' counsel received the $1.8 million from Schmidt, various stipulations and releases began to be circulated among all the parties to the action. Plaintiffs released Schmidt's property of the restraints set forth in the prior stipulation and order. The Court received copies of that correspondence, and assumed that the settlement was on track, although there had not yet been submitted to the Court a stipulation of discontinuance, which was of course required to close the case on the Court's docket. Then in April 1988, John C. Lankenau, Esq. of the firm of Lankenau, Kovener & Bickford wrote to counsel for plaintiffs with copies to the Court and other counsel of record. Mr. Lankenau identified his firm as counsel to the Burke estate, and suggested that Schmidt may have misappropriated the money used to pay plaintiffs from the Estate. In subsequent correspondence in June 1988, Mr. Lankenau stated in substance that his suspicions had been confirmed, and that he intended to move to intervene in the action.

By Memorandum Opinion and Order dated July 19, 1988 [1988 WL 78366], familiarity with which is assumed, I set down a timetable for any motion to intervene which the Estate might be advised to make; and directed plaintiffs to report on the status of the litigation. The present motion followed.

The motion papers recount Schmidt's involvement with the Estate at length. I need not recite the details in full. It is sufficient for present purposes to say that following Michael Burke's death, his widow and two daughters, the latter as co-executors, retained Schmidt as counsel to the Estate, and followed his recommendations

and advice. The Estate's motion papers make out a *prima facie* case that Schmidt did, in fact, misappropriate funds from the Estate, and that the $1.8 million paid to plaintiffs in settlement of their judgment against Schmidt came from the Estate. In the discussion that follows, and for the purpose of that discussion solely, I assume those facts to be true.

## DISCUSSION

The Estate is not presently a party to this litigation. Accordingly it faces the threshold necessity of establishing a procedural status for its claims. The Estate suggests two: this Court's ancillary jurisdiction, derived from inherent equitable powers triggered by fraud; and alternatively, intervention of right under Rule 24(a)(2), F.R.Civ.P. The first of these theories, the Estate contends, entitles it to the initial relief requested, namely, an order compelling the return by plaintiffs to the Estate of the settlement funds received from Schmidt. The Estate's alternative motion for relief, intervention as of right, while falling short of compelling a return of the funds at this time, would entitle the Estate to litigate its claims within the context of this litigation.

*Fraud on the Court*

Plaintiffs say at the outset that "the Estate has presented its motions in inverse order, for it is not until the Court has granted its motion to intervene that the Court can rule on the merits of the Estate's claim to the funds used to settle this action." Markey Affidavit at ¶ 2. That claim is too broad, if read to suggest that a party can never seek post-judgment relief without first qualifying as a Rule 24 intervenor. Thus a non-party seeking to set aside a judgment induced by fraud may invoke Rule 60(b), F.R.Civ.P., without first moving to intervene in the action. That is the holding of *Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir.1980), upon which the Estate places heavy reliance, characterizing its facts as "almost identical to those at bar." Reply Brief at 10.

But *Southerland* is procedurally and factually different from the case at bar. In

*Southerland* a state department of social services had made Medicaid payments to plaintiff's husband, severely injured by a deputy county sheriff. The social services department thereby became subrogated to the recipient's right of recovery to the extent of funds expended for his medical care. When the case came on for trial, the social services department held a subrogee's lien on wife's right of recovery, to the extent of some $30,000 it had paid towards her husband's care.

The department did not intervene in the litigation to protect its lien. Rather, it notified plaintiff's counsel of the lien's existence, and relied upon counsel's representation that he would protect it.

Following selection of a jury, the parties to the litigation negotiated a settlement which the trial court undertook to place upon the record. Plaintiff's counsel represented to the court that he would pay the Medicaid lien, repeating that representation to defendant's counsel. However, plaintiff's counsel never paid the social service department, which eventually filed a Rule 60(b) motion for relief from the judgment, on the ground that judicial approval of the settlement agreement (which on the basis of counsel's representations the trial judge placed on the record) had been procured by fraud. The trial court, after a hearing, found that plaintiff's counsel had practiced fraud upon the court and reallocated the settlement proceeds, so as, *inter alia,* to satisfy the social services department's lien.

■ In the case at bar, the Estate acknowledges the procedural difference in a footnote (Main Brief at 17 fn.):

Because the Estate is not seeking to set aside this Court's judgment of April 29, 1987, but rather is seeking to set aside the payment made by Schmidt pursuant to that judgment, the provisions of Rule 60(b)—which regulate motions to set aside "final judgments" and "orders"— do not apply. The Estate does, however, rely on the case law decided under Rule 60(b)'s savings clause to the extent that it discusses and defines the concept of "fraud upon the court."

The "savings clause" to which this footnote refers appears in the penultimate sentence of Rule 60(b), which follows certain restrictions placed upon relief from judgments or orders; the pertinent language then provides: "This rule does not limit the power of a court ... to set aside a judgment for fraud upon the court."

The Estate cites, in addition to *Southerland,* a number of cases condemning fraudulent practices within the context of seeking relief from a judgment. The Estate implicitly assumes that a nonparty's effort to set aside not a judgment, but rather a payment made pursuant to a judgment, is substantively the same as a Rule 60(b) "fraud upon the court" motion, although clearly falling outside that rule's procedural boundaries. This seems to me a doubtful proposition; criteria for particular relief are not to be lightly separated from their procedural context. The Estate cites no case sanctioning such an extension of the Rule 60(b) "fraud upon the court" concept to circumstances comparable to those at bar.

More importantly, perhaps, I do not perceive in this case a fraud upon *the court.* There was of course fraud aplenty in the case at bar. Schmidt appears to be a fraudsman *extraordinaire.* He deceived not only the Burke beneficiaries, a widow and two daughters, but over a comparably lengthy period of time, he deceived the plaintiff corporations and their counsel as well (a factor which makes the latter's criticisms of the Burke ladies' gullibility ring hollow). But not all fraud is fraud upon the court. *Southerland, supra,* illustrates the distinction. In the words of the Sixth Circuit:

The parties returned to the courtroom and read the settlement's terms into the record. Judge DeMascio raised the question of the MDSS lien and the plaintiff's litigation expenses. Attorney Wolk responded that he would pay both from his 50 percent contingent fee, and assured the court Mrs. Southerland would net $250,000 from the settlement. Accordingly, the court approved the settlement,

but left allocation of damages to the parties. 628 F.2d at 979.

In other words, the trial judge asked a specific question to which plaintiff's counsel gave a dishonest answer. That misconduct fell well within that narrow definition of "fraud on the court" articulated by the Second Circuit in *Kupferman v. Consolidated Research & Manufacturing Corp.*, 459 F.2d 1072, 1078 (2nd Cir.1972), which specifically approved Professor Moore's view that the concept should "embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

While Schmidt's apparent betrayal of the Estate's trust was entirely deplorable, it is not a fraud upon this Court, as thus narrowly defined. No fraud was committed upon the Court. The Court conducted regular status and scheduling conferences until advised that the case was in the process of being settled. Counsel made reference to Schmidt supplying the settlement funds; but the Court did not inquire, nor did counsel volunteer, where Schmidt was getting the settlement funds from. After Schmidt failed to make timely payment under the stipulation of settlement, counsel for plaintiffs presented and the Court endorsed the judgment dated April 28, 1987, which the Clerk entered on the docket on April 30. Post-judgment performance of the judicial machinery in the usual manner would contemplate either payment of the judgment by the judgment debtor, or supplementary proceedings to enforce it. Thereafter Schmidt paid the judgment, with funds I am prepared to accept for this motion he fraudulently obtained from the Estate; but again, the Court never inquired, nor was it told, the source of those funds.

The *Kupferman* definition of "fraud on the court" requires a direct attack upon the judicial process which "defile[s] the court itself" or prevents it from operating. Fraud on the court was present in *Southerland* because the judge asked counsel a settlement-related question and counsel lied to the judge. No such element appears in the case at bar. To be sure, the motive for Schmidt's defrauding the Estate was to pay this Court's judgment; and Schmidt did not tell the Court or other counsel the source of the funds he used to pay it. But the Rule 60(b) grounds for relief are narrowly drawn, reflecting the public policy in favor of finality of judgments. Schmidt's fraud upon the Estate, although causally related to the Court's judgment, is too far out on the periphery of this litigation to constitute a "fraud upon the court." [1]

*Intervention of Right*

That leaves the Estate's alternative theory, intervention of right.

The Estate invokes Rule 24(a)(2), which provides:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In order to intervene under Rule 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected. Failure to satisfy any one of these requirements is sufficient grounds to

---

1. The Estate argues in its Reply Brief at 13–14 that "a settlement agreement may be set aside upon a mere showing that there was fraud *as between the parties;* there is no requirement that the injured party make an additional showing of fraud upon the court." But the Estate was not a party to the settlement between plaintiffs and Schmidt. Therefore the cases the Es-

tate cites for this proposition are inapposite. *Rothenberg v. Kamen,* 735 F.2d 753 (2d Cir. 1984) (plaintiff moved to reopen case on ground its agreement to settlement had been procured by defendant's fraud); *Howard v. Chris–Craft Corp.,* 562 F.Supp. 932 (E.D.Tex.1982) (defendant moved to set aside settlement on ground plaintiff procured it by fraud).

deny the application. *United States v. State of New York*, 820 F.2d 554, 556 (2d Cir.1987) and cases cited.

The Estate does not qualify as an intervenor of right because it cannot satisfy the second element: an interest in *this* action. The rule itself speaks in terms of "an interest relating to the property or transaction which is the subject of the action ..." The "property" underlying this action was the escrow fund plaintiffs established with Schmidt and others as escrow agents. The "transaction" underlying this action is the establishment of that escrow fund, and the defendants' subsequent wrongful actions with respect to it. With the establishment of that escrow fund and Schmidt's subsequent defalcations, the Estate had precisely nothing to do, either as actor or victim. Therefore it is fair to say that the Estate has no interest in the underlying lawsuit. Cf. *United States v. 36.46 Acres of Upland*, 113 F.R.D. 124, 127 (E.D.N.Y.1986).

While the term "interest" in the intervention context "is not reducible to a simple definition," *36.46 Acres of Upland* at 126, it is well settled in the Second Circuit that a "Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent." *United States v. State of New York, supra*, at 558, citing *Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir.1984).

 The most that can be said for the Estate is that after termination of the action, at least as to Schmidt, the principal defendant, by entry of judgment, Schmidt then procured funds to pay the judgment by perpetrating a wholly separate fraud upon the Estate. While neither party cites a case directly in point, and my research has disclosed none, I do not believe the Estate's "interest" relates sufficiently directly to the "property or transaction which is the subject of the action" to satisfy the rule. Federal district courts are courts of limited jurisdiction. Intervention of right is limited by the conditions set forth in the rule. Its boundaries do not extend to every "interest," however important to an individual applicant, that does not bear a sufficiently direct relationship to the underlying lawsuit upon which federal subject matter jurisdiction depends. In cases involving attempted intervention of right by insurers the Second Circuit has stressed the existence *vel non* of a direct interest in the "underlying suits," a phrase Judge Kearse saw fit to capitalize in this discussion in *American Home Products Corp. v. Liberty Mutual Insurance Co.*, 748 F.2d 760, 766 (2d Cir.1984):

> Liberty contends, relying on this Court's recent decision in *Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871 (2d Cir. 1984), that the court abused its discretion because Liberty will not be able to intervene in the Underlying Suits. Its reliance on *Restor–A–Dent* is misplaced, however, since that case dealt only with the insurer's liability for damages in the event that judgment was entered against its insured in an underlying suit. We ruled that such a contingent liability for damages did not amount to such an "interest relating to the property or transaction which is the subject of the action" that the insurer must be permitted to intervene as of right in the underlying suit pursuant to Fed.R.Civ.P. 24(a)(2). 725 F.2d at 874–76. In contrast, Liberty's interest here in the Underlying Suits is not limited to its potential liability for damages, but includes its obligation to defend the Underlying Suits as well. Thus it seems highly unlikely that Liberty will not be allowed to intervene.

In *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984), Judge Friendly wrote that the requirements for intervention embodied in Rule 24(a)(2) must be read "in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided." Plaintiffs at bar invoked the civil RICO statute as a basis for federal subject matter litigation jurisdiction, on the basis of acts entirely unrelated to the conduct of which the Estate now complains; and the Estate moves to

intervene after entry of judgment against the principal defendant.

In sum, the Estate's interest does not relate sufficiently to "the property or transaction which is the subject of this action" to warrant intervention of right.

■ I also conclude that the Estate's motion to intervene is untimely in the totality of the circumstances. The pertinent criteria are summarized in *United States v. State of New York, supra,* at 557:

> Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness. *Deveraux v. Geary,* 765 F.2d 268, 270 (1st Cir.1985), *cert. denied,* [478] U.S. [1021], 106 S.Ct. 3337, 92 L.Ed.2d 742, *South v. Rowe,* 759 F.2d 610, 612 (7th Cir.1985); *Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1365 (11th Cir.1984); *Stallworth v. Monsanto Co.,* 558 F.2d 257, 264–66 (5th Cir.1977).

In the case at bar, I reject plaintiffs' contentions that the Burke heirs should have known of Schmidt's betrayal of their trust sooner than they did; or that the Estate's present counsel delayed unduly in moving to intervene. Schmidt was adept at fraud. He deceived these corporate plaintiffs and their counsel for years. Plaintiffs' counsel now say that a widow and her two daughters should have detected Schmidt's deception earlier. The argument comes with ill grace, from more sophisticated victims, and I reject it. Nor is there any substance to plaintiffs' contention that present counsel for the Estate should have moved to intervene earlier. Counsel conducted a prompt but thorough investigation. Under the 1983 amendments to Rule 11, they were obliged to do so before making the serious charges contained in the proposed complaint in intervention.

The difficulty for the Estate lies in the second element, prejudice to the plaintiffs resulting from the applicant's delay. I may consider that prejudice, even if, as I have found, the delay did not result from fault or inattention on the part of the Estate or its counsel. It is undisputed that, in consideration of Schmidt's payment to plaintiffs, plaintiffs released from attachment and returned to Schmidt significant collateral, consisting of stock interests and real estate. If the Estate is permitted to intervene and seek disgorgement from plaintiffs of the funds received from Schmidt, plaintiffs can do nothing to recapture that security. This seems to me significant prejudice to the plaintiffs, sufficient to characterize the intervention as untimely, notwithstanding the absence of any basis for charging the Estate or counsel with delay in the application. It is useful to add, in this context, that there is an equal lack of basis for the Estate's charge that plaintiffs or their counsel should have inquired more closely than they did into the source of the settlement funds. In making that argument, the Estate seeks to place upon plaintiffs not only a non-existent duty to interests of which plaintiffs were not aware, but also that burden of hindsight which the Estate quite properly refuses to assume itself.

As to the third element, I accept that the Estate may suffer the prejudice of inconvenience if it is not entitled to intervene in this action; an inconvenience resulting from the fact that plaintiffs are presently gathered together in this forum. However, plaintiffs are subject to suit elsewhere.

The final factor, "unusual circumstances," does not point clearly in either direction, given the unusual circumstances of the case.

Accordingly, and as an alternative basis for decision, I deny the Estate's motion to intervene as untimely.[2]

---

**2.** Since failure to satisfy any one of the four requirements is fatal to intervention of right, I need not dwell at length on the third and fourth elements. I agree with the Estate that no existing party represents the Estate's interests, adequately or indeed at all; no one suggests to the contrary. As for the third element, denial of intervention here does not preclude the Estate

*Status of the Litigation*

The parties debate at length in their briefs the Estate's various theories of recovery. The Estate contends it has a constructive trust upon the settlement funds in plaintiffs' hands. It also advances a theory of subrogation, by which it could assert plaintiffs' claims against the defendants. Having denied the motion to intervene for the reasons stated, I need not and do not reach the merits of these or related issues.

The Court's Order of July 19, 1988 directed plaintiffs to state whether, and in what circumstances, the case should be continued on the calendar. The response of plaintiffs' counsel is sensible. They point out that if the case is discontinued at this time, but the Estate ultimately prevails on its claims against plaintiffs in another forum, plaintiffs will have been prejudiced by discontinuance of the action against Schmidt and the other defendants. I accept the suggestion of plaintiffs' counsel, and will direct the Clerk to put the case on the Court's suspense docket. That status underscores what I have just said: that I express no view on the merits of the Estate's several claims. It will also preserve the litigation in the event of a successful appeal by the Estate from this Order denying its application to intervene of right.[3]

### CONCLUSION

The motion of the Estate to compel plaintiffs to return funds is denied.

The Estate's alternative motion for leave to intervene of right in this action is denied.

The parties will bear their own costs.

The Clerk of the Court is directed to place this case upon the Court's suspense docket.

SO ORDERED.

from suing plaintiffs or other parties in separate actions. While the Estate in its briefs views with alarm the possible effect of statutes of limitation, that concern (to the extent it is justified) would not be alleviated by permitting intervention in this litigation; no basis appears for suggesting that intervention would relate back to the date of the original pleadings.

3. An appeal lies from an order of a district court denying a motion to intervene of right. *See, e.g., United States v. State of New York, supra; United States v. Yonkers Board of Education,* 801 F.2d 593 (2d Cir.1986).